GOODENOUGH, appellant, v. SPENCER.

*Fraudulent conveyance — attorney and client — undue influence — purchasers with notice.*

A transfer was made by an embarrassed client, of all his personal property, to his attorney and counsel under the advice and suggestion of the latter, without any actual consideration, but for the purpose of having the property held by the attorney for the sole use and enjoyment of the client, so long as it was in danger of being seized by his creditors, and then of restoring the formal title to the client. *Held,* that, as between the parties, this transfer

Goodenough v. Spencer.

was void, and should be annulled for the purpose of relieving the client, if that could be done without injury to an innocent purchaser.

And the attorney having assigned the bill of sale of the property to a party who had notice, before he took the assignment, that the bill of sale was given by a client to his attorney for professional services, and that the property still remained in the possession of the client; *held*, that the fact of the assignee's failing to make the inquiry suggested by the vendor's continued possession was sufficient to render him responsible for all the information such an inquiry would have secured. And that that affected the title he acquired with all the infirmities it had in the hands of his assignor.

*Held*, also, that under this defect in the assignor's title, the assignee stood precisely where his assignor did before the assignment, holding it in subordination to the vendor's right to annul the sale, as being the result of undue influence exercised by his attorney and counsel over him in procuring it.

APPEAL from a judgment in favor of the defendant entered upon the report of a referee.

The evidence in the action showed, and the referee found, that, on the first day of March, 1870, the defendant executed and delivered unto Samuel Stevens, then his attorney and counsel in legal proceedings, a bill of sale of household furniture, horses, cattle, sheep, wagons, harness, grain and hay, then being in, upon and about his dwelling-house and farm, situated in the town of York, Livingston county, and State of New York. The consideration recited in the bill of sale was $5,000, paid by the defendant to him for certain counsel fees and moneys for legal services due, or to become due, in certain matters at the date of the bill of sale in the hands of the vendee, including suits at law and other matters of adjustment, counsel and advice, disbursements and moneys paid, laid out and expended, costs and charges, and other good and valuable consideration. The property included in the bill of sale was of the value of $5,000; and, at the time of its execution and delivery, the defendant owed the vendee not exceeding the sum of $400; but that sum was found to form no portion of the actual consideration for which the bill of sale was given. The defendant was then in embarrassed circumstances, and was about to be examined in supplementary proceedings taken on a judgment recovered against him; and at the suggestion of the vendee, his attorney and counsel, he executed and delivered the bill of sale to him, in order to prevent the property referred to in it from being appropriated by his creditors to the payment of their debts, upon the agreement, on the part of the vendee, that he would transfer it again to the defendant after

his financial difficulties had been overcome. After the execution and delivery of the bill of sale, the defendant remained in the undisturbed possession of the property mentioned in it, as it was understood between the parties to it that he should, at the time when it was delivered, and used and enjoyed such property as his own.

On or about the 12th day of August, 1870, Samuel Stevens, the vendee in the bill of sale, procured from the plaintiff the sum of $2,500, and delivered to him a written assignment of the bill of sale, accompanying the bill of sale itself. The assignment was absolute in its form, but the plaintiff, under date of the 13th of August, 1870, entered into an agreement with Stevens, by which he agreed to assign the bill of sale back to him for the sum of $3,000, to be paid on or before the 1st day of November, 1870.

During the defendant's examination, in the supplementary proceedings, he testified that he had conveyed his personal property to his counsel, Samuel Stevens, for services. Before the plaintiff took the assignment of the bill of sale, he was informed that the defendant had given that testimony. But it appeared on the trial, according to the conclusion of the referee, that the statement was made under the suggestion and advice of the defendant's attorney and counsel, the vendee in the bill of sale. Before the assignment of the bill of sale, the plaintiff was advised by his own counsel that he could safely purchase the same, and by doing so would acquire title to the property described in it. The plaintiff took the assignment of the bill of sale, relying on that advice, and upon the evidence given concerning it on the supplemental examination, and the statement contained in the bill of sale itself, believing that by doing so he would acquire a good title to the property described and mentioned in it. At the time of the assignment it was orally agreed between the plaintiff and Stevens that the plaintiff should not interfere with the property in the bill of sale for the period of sixty days. And the plaintiff was also informed by Stevens that he was the defendant's attorney and counsel ; that he had been employed by him in various suits and other matters, for which the defendant owed him a large sum of money, and that the bill of sale was given for such services, and was regular and proper. He also informed the plaintiff that the property was in the possession of the defendant, at his farm or place in Livingston county, and had continued in his possession since the execution of the bill of sale. All this information was communicated to the plaintiff before he took the assign-

ment of the bill of sale. Proof was also given from which it was found that the plaintiff had no knowledge or notice of the real state of the transaction, as it existed between the defendant and his attorney and counsel. The defendant refused to deliver the property to the plaintiff, and this action was brought for the recovery of its possession. The referee reported in favor of the defendant, and from the judgment entered on the report the plaintiff appealed.

*D. & T. McMahon,* for appellant. The plaintiff was a purchaser in good faith. Defendant was estopped from denying the validity, consideration or *bona fides* of the bill of sale, as against plaintiff: (a) By his covenant of warranty therein (1 Paige, 473; 57 Barb. 414); (b) by the recitals of the consideration (9 Wend. 209; 3 Keyes, 84); (c) by his oath on examination (30 N. Y. 225, 519; 37 Barb. 383; 1 E. D. Smith, 543).

*Scott Lord* and *Theron G. Strong,* for respondent.

DANIELS, J. Although the character of the transaction which resulted in the execution and delivery of the bill of sale, from the defendant to his attorney and counsel, was in dispute upon the trial, the evidence was sufficient to justify the referee in the conclusion he adopted concerning it, and for that reason that conclusion must now be accepted as exhibiting the transaction in its true light. It was, in brief, a transfer made by an embarrassed client to his attorney and counsel, under the advice and suggestion of the latter, without any actual consideration, but for the purpose of having the property held by him for the sole use and enjoyment of the defendant so long as it was in danger of being seized by his creditors for the payment of their debts, and after that danger had been successfully avoided, restoring the formal title again to the defendant; and that intention appears to have been observed until the vendee undertook to transfer the property to the plaintiff, for the consideration he received for doing so, on the assurance that the bill of sale was regular and proper.

By the statutes of the State, a transfer of property, made by a debtor for the purpose of withholding it from the satisfaction of the lawful demands of his creditors, is prohibited; and the person who receives as well as the one who transfers the title, for the promotion of such a design, are both rendered so far criminal as to be guilty of a misdemeanor. 3 R. S. (5th ed.) 971, § 3. In the consumma-

tion of this transaction, both parties to it involved themselves in the guilt of this offense, and the vendee cannot shield himself from its consequences by reason of the circumstance that its commission arose out of the advice sought, for his protection, by an embarrassed or insolvent client. No attorney or counsel has the right, in the discharge of professional duties, to involve his client, by his advice, in a violation of the laws of the State. And when he does so, he becomes implicated in the client's guilt when, by following the advice, a crime against the laws of the State is committed. The fact that he acts in the capacity and under the privileges of counsel, does not exonerate him from the well-founded legal principle which renders all persons who advise or direct the commission of crime, guilty of the crime committed, by compliance with the advice or in conformity with the directions which may be given.

But while both the attorney and his client may be rendered criminally guilty in such a transaction, the law does not allow the attorney to profit by it where it results in an apparent advantage to him from compliance with the advice given by him. The relation existing between attorney and counsel and client is one of trust and confidence, placing the interests and rights of the client very much under the guardianship and control of the counsel, and liable to abuses resulting in serious and lasting injury to the client. The law regards the client as very much under the influence and control of the attorney and counsel, while the ordinary professional relation exists between them, and for that reason the conduct and acts of the latter are closely watched and scrutinized. If he bargains with the client, while the relation exists, to his own advantage and the detriment or prejudice of the client, the law attributes the result to the use made of his undue influence over the conduct of the client, and in the absence of satisfactory evidence of good faith on the one part, and entirely voluntary action upon the other, sets aside and annuls the transaction. So decided are courts of justice in the observance and enforcement of this principle, that the attorney or counsel will not be permitted to retain the fruits of even an unlawful contract, where, under ordinary circumstances, no relief would, on account of the illegality of the enterprise, be awarded to either party. Where one party, through the means of an unlawful agreement, acquires the property of another, the law regards them as equally in fault, and will do nothing for the redress or protection of either side. But when that advantage is secured

Goodenough v. Spencer.

by an attorney or counsel from his client, the parties are not considered as being equally in the wrong. The law then regards the client as being drawn into the violation of its provisions through the contolling influence of his attorney and counsel over him, and for that reason intervenes for his protection. Hence, in a transfer like that made by the defendant to his attorney and counsel, by the bill of sale which was executed and delivered in this instance, although both parties to it violated the law, the defendant was not equally in the wrong, and the transfer will be annulled for the purpose of relieving him, if that can be done without injury to an innocent purchaser. *Ford* v. *Harrington*, 16 N. Y. 285 ; *Freelove* v. *Cole*, 41 Barb. 318; *Evans* v. *Ellis*, 5 Denio, 640 ; *Howell* v. *Ransom*, 11 Paige, 538.

But that relief will not be carried so far as to disturb the rights of an innocent third person who, in good faith, may have been induced to part with his money or his property, relying upon the title the attorney and counsel had the apparent right and power of transferring; the rule in that case being, that where one of two innocent persons must suffer by the fraud or misconduct of a third, the loss shall be borne by him who conferred upon the wrong-doer the means of deceiving persons honestly dealing with him. *Rawles* v. *Deshler*, 3 Keyes, 572 ; *Whittick* v. *Kane*, 1 Paige, 202, 208.

Under this principle, even though the transfer of the defendant's property to his attorney and counsel would be at once set aside as between them, the redress could not be so far extended as to annul the plaintiff's title, if he had been entirely justified in his conclusion that the defendant had parted with all his rights and interest in the property sold. But he was not, for he omitted one important indication of the continued existence of those rights, arising out of the circumstance that the property still remained in the defendant's possession. And, in addition to that, he was required to stipulate that it should continue in that condition for the period of sixty days after the assignment of the bill of sale to him. These circumstances were not consistent with the existence of an indefeasible title in the person the plaintiff dealt with. They unmistakably pointed to the fact that the defendant had, or claimed to have, some interest in or right to control the property his vendee proposed to sell, notwithstanding the recitals in the bill of sale, the assurances the plaintiff received and the evidence the defendant had previously given. And the plaintiff should have applied to the defendant for

the information which these circumstances admonished him might be given, if he had designed to follow the dictates of reasonable prudence, and in that manner to guard himself against loss arising out of the purchase of another person's property. The fact that he failed to make the inquiry the defendant's possession suggested the propriety of, is sufficient to render him responsible for all the information which such an inquiry would have secured. And that affects the title he acquired with all the infirmities it had in the hands of the man from whom he obtained it. *Williamson* v. *Brown,* 15 N. Y. 354, 361-2; *Grimstone* v. *Carter,* 3 Paige, 421; *Reed* v. *Gamon,* 50 N. Y. 345, 349-50; *Baker* v. *Bliss,* 39 id. 70.

Under this defect in the plaintiff's title he stood precisely where his assignor did before the assignment, holding it in subordination to the defendant's right to annul the sale as the result of the undue influence his attorney and counsel exercised over him in procuring it.

The learned counsel for the plaintiff is entirely right in his position, that the admissions and declarations of Stevens in contravention of his title were not admissible as evidence on the trial of this action, and if any of the oral or written statements made by him and received during the trial had the least bearing on the conclusions arrived at by the referee, the judgment would necessarily be reversed. But they did not, for they were mostly on immaterial inquiries having no influence by way of proof on any of the material facts in the case. The most important of all was the direction or suggestion to the defendant himself, that he should return to Genesee and instruct his counsel there to have the assignment set aside at once as it was of no value whatever, as he had never taken possession under it. The only fact this statement had any tendency to prove was the circumstance that Stevens or the plaintiff never took possession of the property sold. And that was in no way disputed in the case. It was not pretended by any one that either Stevens or the plaintiff ever had possession of the property. On the contrary, the fact was beyond dispute the other way.

There was no impropriety in excluding what was said about not putting the bill of sale upon record, because it was in no sense a security while it stood in the hands of Stevens. If it was valid in his hands at all, it was as an absolute title. As it cannot be maintained in that form, there could be no materiality in any reason suggested for not putting it upon record. The referee has negatived

the idea that it might have been designed as a security. For that reason it was not such an instrument as the law required or allowed to be placed upon record. The case presents no ground on which the judgment can be properly disturbed. It should, therefore, be affirmed, with costs.

DAVIS, P. J., and DONOHUE, J., concurred.

*Judgment affirmed.*